UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| TIMOTHY BLACKSHEAR,<br>Institutional ID No. 934725,<br><br>Plaintiff,<br><br>v.<br><br>YOLANDA M. CORRELL,<br>*et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO.<br>1:11-CV-205-BL<br>ECF |

### REPORT AND RECOMMENDATION

Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on October 21, 2011 (Doc. 1). He alleges that his rights under the United States Constitution and under federal and state law were violated by staff members at the French Robertson Unit ("Robertson Unit") of the Texas Department of Criminal Justice - Institutional Division ("TDCJ") and by various TDCJ officials, who subjected him to a visual body cavity search and violated his right to free exercise of religion under Federal and State law. The Defendants in this case include Yolanda M. Correll, William J. Wheat, Melissa A. Balderas, Donna W. Sanchez, Richard D. Zavala, and Walter Miles.

The court entered an Order Setting Evidentiary Hearing on November 7, 2011 (Doc. 6), setting an evidentiary hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) and 28 U.S.C. § 1915 and requiring TDCJ officials to provide authenticated copies of Plaintiff's records relevant to the claims in Plaintiff's complaint. Plaintiff refused his consent to having the United

States magistrate judge conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c) in his complaint and again at the *Spears* hearing.

Pursuant to 28 U.S.C. § 1915A, the court has conducted a review of Plaintiff's complaint as supplemented by his testimony at the evidentiary hearing in this case, as well as Plaintiff's various additional written documents and makes the following report and recommendation to the United States District Judge.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, as developed by his testimony, Plaintiff claims that:

1. Plaintiff has been confined to the Robertson Unit during all times relevant to the claims in his complaint.

2. Plaintiff is a Christian. He believes that he should never be unclothed except before his wife.

3. On June 17, 2011, in the 4D-wing 1 section dayroom, the male Defendants subjected Plaintiff and the other inmates present to a visual cavity strip search. Three female officers, also Defendants, were present. This violated Plaintiff's belief in modesty.

4. No contraband was found during the search.

5. Inmates are often subjected to strip searches; however, female officers are only rarely present.

6. Five handicapped shower stalls were available in the wing; Plaintiff would have preferred to be searched in one of those, to protect his modesty.

Plaintiff is seeking declaratory and injunctive relief and an award of damages.

### II. ANALYSIS

In both proceedings *in forma pauperis* and civil actions brought by a prisoner against a governmental entity, officer, or employee, the court is required under 28 U.S.C. §§ 1915-1915A to dismiss the complaint or any portion of the complaint if the complaint is frivolous or malicious or fails to state a claim on which relief may be granted. These provisions thus apply to this *in forma pauperis* prisoner civil rights action. *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999). "An [*in forma pauperis*] complaint may be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) if it has no arguable basis in law or in fact." *Ruiz v. United States*, 160 F.3d 273, 274-75 (5th Cir. 1998). A claim has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless. *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The court is authorized *sua sponte* to test whether the proceeding is frivolous or malicious even before the service of process or before an answer is required to be filed. *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990); *see also* 42 U.S.C. § 1997e(c)(1). A questionnaire or evidentiary hearing may be used to assist the court in determining whether the case should be dismissed under these provisions. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (use of questionnaire to develop the factual basis of the plaintiff's complaint); *Spears*, 766 F.2d 179 (use of an evidentiary hearing).

The court has reviewed Plaintiff's arguments and claims in his complaint and testimony to determine whether Plaintiff's claims present grounds for dismissal or present cognizable claims which require the Defendants to answer and the case to proceed.

In order to state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).

Plaintiff alleges that the Defendants have violated his right to free exercise of religion. He alleges that he believes in modesty and should not be subjected to strip searches, believing that men should only be unclothed fully in front of their wives. Plaintiff argues that in order to exercise his religion, he must not be subjected to strip searches, particularly strip searches in front of other inmates, guards, or female employees. Plaintiff argues that under the Religious Land Use of Institutionalized Persons Act ("RLUIPA") Defendants are required to use the least restrictive means of limiting free exercise of religion.

Prisoners retain those First Amendment rights that are consistent with their status as prisoners or with the legitimate penological objectives of the prison. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). While imprisonment "necessarily entails a loss of manifold rights and liberties," a prisoner's right to practice his religious beliefs is protected. *Muhammad v. Lynaugh*, 966 F.2d 901, 902 (5th Cir. 1992). This right is, however, subject to reasonable restrictions and limitations necessitated by penological goals. *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). A prisoner "is not free to do that which he might wish to do, nor may he do allowable things at a time and in a manner he might prefer." *Muhammad*, 966 F.2d at 902. Several factors are relevant in determining whether a prison regulation infringes on an inmate's constitutional rights: (1) is there a valid, rational correlation between the prison regulation and the legitimate governmental interest advanced; (2) are there alternative means of exercising the rights that remain available to the inmates; and (3) what is the impact of an accommodation in favor of the inmate on prison staff, other inmates, and the allocation of prison resources generally. *Id.* A prisoner's First Amendment rights may be circumscribed when legitimate penological objectives such as institutional order and security outweigh the concerns associated with preservation of the inmate's right. *See Thornburgh v. Abbott*, 490 U.S. 401, 404,

419 (1989). The court will accord "great deference to prison administrators' judgments regarding jail security." *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

The Fifth Circuit has recognized that a prisoner possesses a "constitutional right to bodily privacy" that "is minimal, at best," *Oliver*, 276 F.3d at 745; and "loses those rights that are necessarily sacrificed to legitimate penological needs." *Elliott v. Lynn*, 38 F.3d 188, 190-91 (5th Cir. 1994). The Fifth Circuit has held that strip searches carried out in non-secluded areas of the prison and in the presence of prison employees of the opposite sex are not unconstitutional and did not constitute an infringement upon the plaintiff's Fourth Amendment rights to be free from an unreasonable search. *Elliott*, 38 F.3d at 190-92. The court noted in *Elliott* that "[t]he Fourth Amendment . . . requires that "searches or seizures conducted on prisoners must be reasonable under all the facts and circumstances in which they are performed." *Id.* (citing *United States v. Lilly*, 576 F.2d 1240, 1244-45 (5th Cir. 1978)). The court explained that "[b]ecause a prison administrator's decisions and actions in the prison context are entitled to great deference from the courts, the burden of proving reasonableness is a light burden." *Id.*

In *Oliver*, the court noted that it has twice "found that security concerns can justify the strip search of a male inmate in front of a female guard." 276 F.3d at 743. The court upheld the decision of the district court, which found that security concerns justified cross-sex surveillance of prisoners. *Id.* at 746. Various unpublished district court cases in the Fifth Circuit have found that strip searches in the presence of prison officers of the opposite sex did not meet the exaggerated or excessive standard and did not violate a prisoner's Fourth Amendment rights. *See, e.g., Rodgers v. Marquandt*, 2011 U.S. Dist. LEXIS 65644 (N.D. Tex June 20, 2011); *Urias v. Grounds*, 2011 U.S. Dist. LEXIS 144202 (E.D. Tex. December 15, 2011); *Beasley v. Holman*, 2011 U.S. Dist. LEXIS 74576 (E.D. Tex. July 11, 2011). This may be contrasted with *Moore v. Carwell*, 168 F.3d 234, 237 (5th Cir.

1999), wherein the Fifth Circuit noted that it was possible that the a strip search of a male inmate by a female officer, in the absence of an emergency or extraordinary circumstances, could constitute a viable Fourth Amendment claim. However, in *Moore*, the court stated: "A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs." *Moore*, 168 F.3d at 236-237.

The RLUIPA mandates that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A government regulation substantially burdens a "religious exercise" for the purposes of the RLUIPA if it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). The Fifth Circuit has found that the RLUIPA does not permit suits against Defendants in their individual capacities. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 329 (5th Cir. 2009). The court accepts Plaintiff's allegations that he believes in modesty and humility and that he would have preferred to be strip searched in a private handicapped shower stall. However, Plaintiff's allegations fail to demonstrate that he has been prevented from exercising his religious beliefs or that he has been substantially burdened in exercising his religion. Plaintiff has not alleged that the strip searches that he and other inmates underwent forced him to choose between following his religious beliefs or enjoying some

generally available, non-trivial benefit. *Adkins*, 393 F.3d at 569-70. Therefore, Plaintiff's free exercise of religion and RLUIPA claims lack an arguable basis in law or fact; this court recommends that such claims be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

Plaintiff further claims that he was subjected to an unreasonable search, specifically a visual body cavity strip search in a non-emergency situation when female correctional officers were present. In a recent decision involving a strip search, the Fifth Circuit stated, "Despite . . . barriers to finding any constitutional right to bodily privacy, several courts of appeal, including this court, have found that prisoners possess such a constitutional right. Even though any such right is minimal, at best, we proceed to the next step of the due process analysis, balancing the intrusion against the state's legitimate penological interests." *Oliver*, 276 F.3d at 745. The Court noted that it had twice found that security concerns can justify the strip search of a male inmate in front of female guards. It held in *Letcher v. Turner*, 968 F.2d 508 (5th Cir. 1992), that prison authorities constitutionally strip searched an inmate during a lockdown following a food fight. Similarly, in *Elliott v. Lynn*, 38 F.3d 188 (5th Cir. 1994), an increased incidence of prison murders, suicides, stabbings, and cuttings justified a shakedown that included mass strip searches in front of female employees. Thus, it appears that a strip search may violate an inmate's constitutional right to bodily privacy unless the search is justified in the interest of promoting security or other penological interests.

Plaintiff testified that inmates may be subjected to strip searches on various instances while in prison. Plaintiff testified that inmates and officers disagreed about whether shower bags may be kept in the dayroom, that there were shower bags in the dayroom, and that the shower bags and the inmates were searched for contraband. Plaintiff testified that he was in the dayroom with a group of about fifteen inmates. Plaintiff's factual allegations, accepted as true, demonstrate the inherent security interest of the officers and the institution in the situation described.

Plaintiff also alleges that the Defendants violated applicable TDCJ policy in conducting the strip search. The court notes that a prison authority's failure to follow internal rules or administrative procedures does not give rise to any issue of constitutional magnitude as long as minimum constitutional requirements are met. *See, e.g., Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Having carefully considered Plaintiff's factual allegations, his testimony, and his claims, the court finds that Plaintiff has failed to state a cognizable constitutional claim for an unreasonable search or for violation of his right to free exercise of religion and recommends that such claim be **DISMISSED WITH PREJUDICE AS FRIVOLOUS**.

### III. CONCLUSION, RECOMMENDATION, AND TRANSFER

The court has considered Plaintiff's allegations in his extensive complaint, his testimony, and the applicable law and recommends that the United States District Judge:

1. **DISMISS** Plaintiff's claims against all Defendants for deprivation of free exercise of religion and for an unreasonable search or seizure, **WITH PREJUDICE AS FRIVOLOUS**;

2. **DISMISS** Plaintiff's claims under the RLUIPA **WITH PREJUDICE AS FRIVOLOUS**;

3. **DENY** any pending non-dispositive motions not otherwise addressed above.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or

refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

A copy of this order shall be sent by first class mail to all parties appearing *pro se* and to any attorney of record by first class mail or electronic notification.

Dismissal of this action does not release Plaintiff or the institution where he is incarcerated from the obligation to pay any filing fee previously imposed. *See Williams v. Roberts*, 116 F.3d 1126, 1128 (5th Cir. 1997).

**IT IS ORDERED** that the transfer of this case to the United States magistrate judge is terminated, and the case is hereby transferred to the docket of United States District Judge Sam R. Cummings.

DATED this 25thday of January, 2012.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**